## THE PEOPLE *v.* ROBINSON.

WHERE an indictment for murder—the case being tried in the Fourth District Court—charges the offense to have been committed within the city and county of San Francisco, without giving the particular locality in which it was committed : *Held*, that this is sufficient to show that the Fourth District Court had jurisdiction.

The Fourth District Court, although the district only comprises a portion of the the county of San Francisco, is a Court for the whole county, having jurisdiction over persons and subject matter therein. The territorial limits assigned to this Court are given for the purposes of convenience in elections, etc., and not for the purpose of limiting its powers.

The Supreme Court will take judicial notice that the Fourth Judicial District is a district within and for the county of San Francisco.

District Courts are Courts of general jurisdiction, and the regularity of their proceedings is presumed. It rests with a party seeking to impeach them to show affirmatively the irregularity, or acts, or omissions which affect the validity of their judgments—especially after the jurisdiction of the person is once shown.

Where, on trial for murder, the record shows that the Court gave written instructions to the jury, but the instructions are not contained in the record : *Held*, that the absence of the instructions is not error ; that if they were erroneous, appellant must show it.

APPEAL from the Fourth District.

Indictment for murder. The indictment is headed "State of California : in the Court of Sessions of the city and county of San Francisco, December term, A. D. one thousand eight hundred and fifty-nine ; *The People of the State of California* v. *Philip R. Robinson ;* " and runs " Philip R. Robinson is accused by the grand jury of the city and county of San Francisco, State of California," etc., charging the offense to have been committed " at the said city and county and State aforesaid." The certificate of the Clerk transferring the indictment to the Fourth District Court is in the usual form, that the indictment was found in the Court of Sessions of the city and county of San Francisco, State of California, and is hereby certified and transmitted to the Fourth District Court of said city, county and State, for trial.

The facts as to the separation of the jury during the trial are, so far as shown by the record, that " the jury were dismissed and allowed to separate under the statutory caution of the Court." The

jury were dismissed several times, on adjournment of the Court, during the trial, and the above entry made by the Clerk each time. After the evidence was closed, the Court adjourned till the next day, the jury being allowed to separate as above stated, without being under the control of an officer. So of a separation during the argument of the case.

As to the instructions, the record shows that " the argument being closed, the Court read to the jury its written charge, and defendant's counsel read to the jury the instructions by them asked and allowed by the Court, and thereupon the jury retired in charge of a sworn bailiff of the Court, to deliberate upon their verdict ;" and that after the jury had returned for further instructions, " the Court read to the jury so much of its written charge and such further written instructions as were requested ;" but neither the charge nor the instructions appear in the record.

As to how the jury came into Court when they asked for instructions, and also when they had agreed on their verdict, the record says : " And now, at nine o'clock and twenty minutes, P. M., the jury in this cause came into Court, and being called, answered to their names," etc. ; and " Now, at ten o'clock and fifteen minutes P. M. of this day, the jury herein again came into Court, and being called, answered to their names; and the defendant and his counsel and the District Attorney being present in open Court as before, the jury herein rendered their verdict as follows : ' We, the jury, find the prisoner guilty of murder in the second degree,' and so said they all and were thereupon discharged. And on motion of the District Attorney, the Court fixed Saturday, the third day of March, 1860, as the time for passing sentence upon the defendant, until which time the defendant was remanded to the custody of the Sheriff." The record does not show any entry of an adjournment of the Court at this time.

The entry at the time of sentence is :

" District Court of the Fourth Judicial District of the State of California in and for the city and county of San Francisco :

" February term, A. D. 1860.

" Court met pursuant to adjournment.

" Present John S. Hager, Judge.

"THE PEOPLE OF THE STATE OF CALIFORNIA *vs.* PHILIP R. ROBINSON. } Convicted of murder in the second degree, in killing Peter Burns, deceased.

" This being the day heretofore fixed by the Court for passing sentence," etc.  The sentence then follows, beginning with a recital that the defendant was informed by the Court of his indictment, etc., his arraignment, his plea of " Not guilty," his trial and the verdict, his being asked if he had any cause to show why judgment should not be pronounced against him and his answer that he had no cause, etc., and concludes thus : " Thereupon, the Court proceeded to and did pronounce its judgment and sentence as follows, to wit : Whereas, Philip R. Robinson, the defendant herein, has been duly convicted in this Court of the crime of murder in the second degree, it is therefore ordered, adjudged and decreed, that the sentence of the Court is that said defendant, Philip R. Robinson, be imprisoned in the State Prison of the State of California for the term of his natural life."    Then follows the certificate of the Clerk that " the foregoing is a true and correct copy of an order, and the judgment entered on the minutes of said Fourth District Court in the above entitled action," the certificate bearing date March 5th, 1850.

The record shows no date of the session of the Court when sentence was pronounced.

Defendant appeals.

The precise facts as to certain technical points made by counsel for appellant have been given at some length for the reason that he seems to have noticed about all the irregularities which would be likely to arise in the course of a criminal trial, and the opinion of this Court being adverse to his positions, will serve as a precedent for a large number of cases.

*A. M. Heslep,* for Appellant.

I.    The indictment in this cause is entitled " of a Court *de facto,* and not a Court *de jure.*"

II.    The indictment on its face, and the certificate of transfer thereon, does not show that the District Court of the Fourth Judicial

District had jurisdiction of said indictment ; jurisdiction being an affirmative element, the same must appear on the face of the pleadings, and not be claimed by inference or intendment of law.

When an indictment is found in the Court of Sessions, for murder, manslaughter, or arson, it shall be transmitted by the Clerk to the District Court sitting in the county for trial. (Art. 665, sec. 53, 153, Wood's Dig.)

· The Fourth Judicial District is composed of a portion of the county of San Francisco.

The Twelfth Judicial District is composed of another or remaining portion of the county of San Francisco and the county of San Mateo. (Art. 632, sec. 12, 149, Wood's Dig.)

The territorial division or limits of the districts aforesaid are defined and fixed, and both include the county of San Francisco, and one the entire county of San Mateo.

Another provision of the statute gives to both these counties jurisdiction territorially of the county of San Francisco. (Arts. 642–3, secs. 2–3, 150, Wood's Dig.)

The District Court sitting in the county where the indictment s found has jurisdiction in cases of murder, *a fortiori* but one District Court has jurisdiction though two Courts may exist in the county. It follows that that Court has jurisdiction only where the offense is committed within its territorial limits. If this conclusion is well founded, certain consequences result.

1st. It becomes necessary then to include, by way of averment, a *locus in quo*, to give jurisdiction to one or the other Court, where two are within the limits of one county.

The Court of Sessions is controlled by the statute, and has no discretion in cases of murder, manslaughter and arson. The indictment must be certified to the District Court sitting in the county where it is found ; and if two Courts exist in the same county, then to the one containing the *locus in quo*, or place of commission of the offense.

The same remarks apply to the certificate of transfer indorsed on said indictment. The objection is, that it does not show sufficient on its face in the absence of a *locus in quo* in the indictment to give jurisdiction.

III.   It does not appear from the record at each adjournment or recess of the Court, that the jury were charged by the Court " not to converse among themselves, or with any one else, on any subject connected with the trial, or to form or express any opinion thereon, until the cause was finally submitted to them."

It is not sufficient for the Clerk to say the jury were permitted to disperse " under the statutory caution of the Court."

IV.   The Court below erred by allowing the jury to separate after all the evidence was closed, and all the facts of the case were before the jury, without being in the control or custody of an officer.

The question raised under this assignment of error is : At what stage of the proceedings, in a criminal trial, is the case deemed submitted to the jury ?  The answer to the query is narrowed down by another inquiry.  Are the argument of counsel and the charge of the Court, incidents to a trial, necessary and indispensable to the finding of a verdict by the jury ?  If they are, then the cause cannot be deemed as submitted until these events have taken place.   But if a verdict can be rendered without, then the cause is submitted on the closing of the evidence.

The judgment of the jury is pronounced upon the facts, not upon argument of counsel, or the charge of the Court.   The jury deals exclusively with the facts ; we therefore insist that with the closing of the testimony, the cause is submitted to the jury, after which time they cannot be allowed to separate.   (Art. 1645, sec. 393 ;  Art. 1646, sec. 394 ;  Art. 1856, sec. 410, 300, 302, Wood's Dig. ; 4 Wen. Black., Ch. 27, 360.)

V.   The Court below erred in this ; that after the evidence had closed on both sides, and the argument opened by the District Attorney, and the defendant's counsel had concluded his argument, a recess of one hour was taken, during which time the jury were allowed to separate and without being in the custody of an officer. (Foregoing authorities and the case of the *People* v. *Backus*, 5 Cal. 275.)

VI.   It appears from the record in this cause, that the Court read to the jury its written charge, and the same does not appear to have been filed and thereby made a part of the record.

The Court of its own motion may charge the jury (Art. 1649, 301, Wood's Dig.) ; and any error therein will be reviewed by the Supreme Court, though exceptions thereto were not taken at the time. (*The People, &c.,* v. *Levison* ; Art. 1677, sec. 438, 304, Wood's Dig.)

Exceptions may be taken to the charge of the Court. (Art. 1673, 303–304, third clause of the section, Wood's Dig.)

The appellate Court will review the instructions or charge of the Court, though no exceptions are taken at the time of trial. (*The People* v. *Levison.*) A *fortiori,* the charge or instructions of the Court are (when given) a part of the record or judgment roll, and it is error to withhold the same, thereby taking from the prisoner the right or opportunity for a review if desired.

VII. It does not appear from the record, that after the cause was finally submitted, the jury was committed to the custody of an officer or bailiff, who was first " sworn to keep them together in some private and convenient place, and not to permit any person to speak to them, nor to speak to them himself, (the bailiff) unless it be to ask them whether they have agreed upon a verdict, and then return them into Court when they have so agreed."

The language used in the record, in this respect, is thus : " The jury retired in charge of a sworn bailiff of the Court to deliberate upon their verdict."

The Sheriff of the county always has sworn bailiffs in attendance on Court. The bailiff has taken a general oath to perform his duties. But there are special cases of duty demanding by the statute a special oath. The oath is prescribed in the statute. (Art. 1650, sec. 402, 301, Wood's Dig.)

The duty here being imperative, if it was performed it must be shown affirmatively, and not claimed by implication.

VIII. It does not appear from the record in this cause that the jury during their deliberations were kept together by an officer first sworn for that purpose. Nor does it appear therefrom, before and after the case was finally submitted for their consideration, that the jury was brought into Court in the custody of an officer or sworn bailiff, when they came into Court to deliver their verdict.

The officer sworn to take charge of the jury when deliberating

on their verdict shall bring them into Court when they have agreed. (Art. 1650, sec. 402, Wood's Dig.)   Or if they (the jury) desire further instructions the officer shall conduct them into Court, or if they have agreed upon a verdict. (Art. 1655, sec. 458, art. 1659, sec. 414, Wood's Dig.)

It does not appear in what manner the jury found their way into the Court room on either of these occasions.

IX.   It does not appear from the record that the verdict recorded herein was agreed upon by the jury, or that the jury ever did agree upon a verdict, or that at the time they were in Court that it was for the purpose of rendering their verdict.

When a jury is brought into Court by the proper officer, " they shall be asked by the Court or Clerk whether they have agreed upon their verdict, and if the foreman answer in the affirmative they shall, on being required, declare the same.   (Art. 1660, sec. 416, 302, Wood's Dig.)

X.   It does not appear at the time the sentence and judgment of the Court was pronounced therein, the Court convened, *de facto and de jure*, or acted as a *de facto* Court, but without authority of law.

The day of the month is not stated in the record, so we are left entirely in the dark, whether the time of sentence was the same as fixed by the Court on the ninth day of February.   And there is nothing in the previous orders of the Court to authorize an assembling of the Court; for the record does not show an order of adjournment to that time, and the words " Court met pursuant to adjournment " will not cure this defect, and legalize the meeting of the Court on the third of March, unless a previous order of adjournment to that time was made, either at that or some subsequent consecutive time.   The record should show upon its face continuous orders of adjournment up to the day of sentence, to give to this meeting of the Court the quality of a *de jure* as well as *de facto* meeting of the Court.

XI.   The record and pretended judgment do not show a judgment of the Court that the appellant hath been adjudged upon the verdict of the jury guilty of the crime of murder upon the person of Peter Burns, but the judgment simply recites the verdict of the jury, and does not pronounce judgment thereon.

This statement is wholly insufficient ; the accused must be on the verdict of the jury adjudged guilty of the crime found by the verdict, and be made to respond thereto by its sentence or penalty annexed to the crime. The judgment and sentence of the Court are distinct and at the same time connecting elements ; the sentence or punishment is a conseqence annexed to the judgment, or a result flowing therefrom.

*Thos. H. Williams, Attorney General,* for Respondent.

I.   The first objection is the same as that made in the case of the *People* v. *Connor,* and is answered in my brief on file in that case.

II.   The indictment charges the offense to have been committed in the city and county of San Francisco, but does not set forth the particular locality within said city and county so as to determine whether it was within the Fourth or Twelfth Judicial District. The Clerk of the Court of Sessions transmitted the indictment to the Fourth Judicial District Court. The defendant appeared in the latter Court, with Mr. Byrne as his attorney, plead to the indictment, was tried and committed.

The practice in this case was precisely that which has prevailed in the county of San Francisco since the organization of its Courts. I submit this point, so gravely urged, by a simple reference to the following sections of statutory law : Wood's Dig. 150, arts. 640, 642, 643 ; page 153, art. 665 ; and page 289, art. 1541.

III.   Answered in Connor's case.

IV and V.   Answered by article 1622, Criminal Practice Act (Wood's Dig. 297).

VI to XI.   Answered in Connor's case.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

Defendant was convicted of the crime of murder in the District Court of the Fourth District.

1. The first assignment has just been disposed of in the case of *The People* v. *Connor.*

2. That the indictment, on its face, and the certificate of the

People *v.* Robinson.

transfer thereon, does not show that the District Court of the Fourth District had jurisdiction. The indictment charges the offense to have been committed within the city and county of San Francisco. It is true, the particular place or locality in which it was committed is not given. Nor was this necessary. The Court must take judicial notice that the Fourth District is a district within and for the county of San Francisco, though it comprises only a portion of the territory of that county. But this division does not interfere with its jurisdiction over persons and subjects within the county. It would lead to very great inconvenience if this were so. By article six hundred and forty, section twenty of the Act respecting Courts of Justice, (Wood's Dig. 150) it is provided, that in all the counties of this State, the District Court shall have jurisdiction to try and determine all indictments transmitted to them from the Courts of Sessions in the cases provided for by law. No distinction seems to be made as to the district, arising from the place or particular locality where the crime is committed. The District Court for the Fourth District is not less a Court for the whole county because it has territorial limits—these being given not for the purposes of limiting its powers, but for convenience in elections, etc. (*Slade* v. *His Creditors*, 10 Cal. 483.)

Several errors are assigned which we do not think it necessary to notice in detail ; for they have either been decided in other cases, or fall within principles already settled. District Courts are Courts of general jurisdiction, and the regularity of their proceedings is presumed. It rests with a party seeking to impeach them to show affirmatively any imputed irregularity, or acts or omissions which affect the validity of their judgments, especially after the jurisdiction of the person is once shown. (*People* v. *Barber*, 9 Cal. 231 ; *People* v. *Martin*, 6 Id. 478 ; *People* v. *Connor*, decided at this term.)

There is nothing in the point that the record does not show the instructions given by the Court. It appears that they were given in writing, and if they were erroneous, this must be shown by the appellant.

The other points are not sustained by the record, or present, if sustained, no reversible error.

Judgment affirmed.