UNITED STATES, respondent, *v.* ENSIGN, appellant.

TERRITORIAL LEGISLATURE — *powers — limitations — case affirmed.*  The Organic Act that confers upon the district courts common-law and chancery jurisdiction, and also the jurisdiction exercised by the United States circuit and district courts, provides that this jurisdiction, in all alike, shall be as limited by law.  This limitation may extend to the *mode* of exercising this jurisdiction, and applies to all branches of that jurisdiction.  Case of *Gallagher* v. *Basey*, 1 Mon. 457, affirmed.

PRACTICE — *common-law forms — scire facias — complaint.*    The Civil Practice
Act applies as well to cases in which the district court exercises the juris-
diction of the United States circuit and district courts, and in which the
United States is a party.    The common-law forms of procedure, including
*scire facias,* are done away, and a complaint is necessary in all civil
actions.

UNDERTAKING — *a civil action.*    The action on a forfeited undertaking, though
given to secure appearance in a criminal case, is itself a civil action on a
contract with liquidated damages.

*Appeal from Second District, Deer Lodge County.*

CHUMASERO & CHADWICK, for appellants.

MERRITT C. PAGE, United States Attorney, for respondent.

The judgment at the April term was rendered in accordance
with the practice in such cases, and is good and sufficient in law.

The theory of the common law is, that the rendition of a judg-
ment is the act of the law, not of the court.    Freeman on Judg-
ments, 546.

The journal entry shows that the plaintiff was entitled to judg-
ment, and that it was the intention of the court to give effect to
the law.    Nothing more was needed.

No particular formula of words are necessary to constitute a
valid judgment.    Defects in phraseology, or the failure to employ
the terms in common use in such cases, cannot operate to render
the judgment a nullity.    Freeman on Judgments, § 47.

WADE, C. J.    This is an action upon an undertaking.

The facts are as follows:    At the September term, 1873, of the
district court within and for the county of Deer Lodge, sitting to
hear and determine causes arising under the constitution and laws
of the United States, an indictment was found against the defend-
ant Ensign and others, charging them with a conspiracy to defraud
the United States.    Thereupon, on the 31st day of December,
1873, Ensign filed with the clerk of the court a bond conditioned
for his appearance at the ensuing April term of the court to an-
swer such charge, in the sum of $2,500, with Largey and Carroll
as sureties thereon.    At the ensuing term Ensign did not appear,
and his undertaking was adjudged forfeited, and the cause contin-

ued until the next term. On the 27th day of April, 1874, a *scire facias* was issued by the clerk of the court setting forth the finding of the indictment, the execution of the undertaking, the forfeiture of the same, the liability of the sureties thereon, and an order upon the defendants to appear at the September term, 1874, of the court, to show cause why the United States should not have execution against them for the amount of such undertaking, if they desired so to do, which writ was served upon the defendant Carroll on the 8th day of May, 1874, and on the defendant Largey on the 7th day of September, 1874. Afterward, on the 10th day of September, 1874, at the September term of the court, the United States attorney moved for a judgment against the defendants, which motion was granted, and judgment entered for the sum of $2,500, the amount of the undertaking, to which the defendants duly excepted and filed their bill of exceptions, and from the judgment appealed to this court.

. Upon this statement of facts was the judgment regularly and duly obtained? By the execution of the undertaking and the forfeiture thereof, a right of action accrued to the United States, in an action arising under the laws of the United States. In the prosecution of this right the practice of the common law was adopted, and a *scire facias* issued. This writ, when it is applicable and the proper remedy, is a pleading. It takes the place of a declaration or complaint, and may be demurred to for insufficiency or otherwise, or answered, and an issue formed as in other cases. But under the Practice Act of the Territory this writ is not the proper method of commencing an action. Section "1" of that act provides, "there shall be in this Territory but one form of civil action for the enforcement or protection of private rights, and the redress or prevention of private wrongs, which shall be the same at law and in equity." Section 28 provides, that civil actions in the district courts "shall be commenced by the filing of a complaint with the clerk of the court in which the action is brought, and the issuing of a summons thereon." In the case before us no complaint was filed and no summons issued. Clearly the provisions of the Practice Act were disregarded in the prosecution of the action, and the question is presented whether or not the pro-

visions of that act are applicable to a case of this kind arising under the laws of the United States.

1. This is a civil action, and what follows is said in relation to civil actions. It is prosecuted by the plaintiff to recover the amount of an undertaking and promise made by the defendants. The fact that the undertaking was given to secure the appearance of Ensign to answer a criminal charge does not make it a criminal action, or in the nature of one. It is an action on a contract with liquidated damages.

2. When the United States comes into the district courts of the Territory, while sitting in their capacity of, and clothed with the jurisdiction of circuit and district courts of the United States, to enforce a civil right arising under the constitution and laws of the United States, must they conform to the practice of the Territorial courts? Or, in such cases, do the practice and mode of proceedings in the United States courts take the place of and supplant our Civil Practice Act?

What is the power of the legislature of the Territory to regulate the exercise of the jurisdiction of the district courts? The Organic Act authorizes and provides for a legislature, and gives it authority to legislate upon all rightful subjects of legislation. Was the adoption of the Civil Practice Act within the legitimate scope of legislative authority, and if so, to what extent does it regulate the practice of the district courts while sitting to hear civil causes arising under the constitution and laws of the United States? In *Clinton* v. *Englebrecht*, 13 Wall. 441, Chief Justice CHASE discusses the powers of Territorial legislatures under Organic Acts like our own, and says: "The theory upon which the various governments for portions of the Territory of the United States have been organized has ever been that of leaving to the inhabitants all the powers of self-government consistent with the supremacy and supervision of national authority and with certain fundamental principles established by congress. As early as 1784 an ordinance was adopted by the congress of the confederation, providing for the division of all the Territory ceded or to be ceded, into States, with boundaries ascertained by the ordinance. These States were severally authorized to adopt for their temporary government the constitution and laws of any one of the States, and

provision was made for their ultimate admission, by delegates into the congress of the United States. We thus find the first plan for the establishment of governments in the Territories authorized the adoption of State governments from the start, and committed all matters of internal legislation to the discretion of the inhabitants, unrestricted otherwise than by the State constitution originally adopted by them. This ordinance applying to all the Territories ceded or to be ceded, was superseded three years later by the ordinance of 1787, restricted in its application to the Territory north-west of the river Ohio, the only Territory which had then been actually ceded to the United States."

After speaking of the organization of the Territorial governments since the ordinance of 1787, he continues : " In all the Territories full power was given to the legislature over all ordinary subjects of legislation. The terms in which it was granted were various, but the import was the same in all." In that case the court was testing the validity of the statute of the Territorial legislature of the Territory of Utah respecting the impaneling of jurors. And the question was whether such statute came within the scope and meaning of a provision of the Organic Act of that Territory, which is the same as that of our own, providing that the legislative power of the Territory shall extend to all rightful subjects of legislation, and the statute was held valid for the reason that the legislature in enacting it had not transcended its authority.

The logical sequence deducible from this decision is, that a Territorial legislature clothed with the authority of our own under the Organic Act, has the rightful authority to enact a Code of Civil Procedure, and to prescribe the forms of actions and modes of practice in the Territorial courts.

Certainly if it can regulate the manner of impaneling juries it can provide how actions shall be commenced and prosecuted, and the form and mode of proceeding therein. In *Hornbuckle* v. *Toombs*, 18 Wall. 656, the supreme court of the United States says: " From a review of the entire past legislation of congress on the subject under consideration, our conclusion is that the practice, pleadings and forms and modes of proceeding of the Territorial courts, as well as their respective jurisdictions, subject,

as before said, to a few express or implied conditions in the Organic Act itself, were intended to be left to the legislative action of the Territorial assemblies, and to the regulations which might be adopted by the courts themselves."

We conclude then that our legislature did not overstep its authority in enacting and adopting the Code of Civil Procedure.

It remains to ascertain to what extent the Code thus established and the practice thereunder apply in the Territorial district courts, when sitting to hear and determine civil causes, arising under the constitution and laws of the United States. Our district courts are, by the Organic Act, given common-law and chancery jurisdiction, and also the jurisdiction exercised by the circuit and district courts of the United States, and that such jurisdiction shall be as limited by law.

This term "as limited by law" applies as well to the common-law jurisdiction as to district and circuit court jurisdiction conferred upon our Territorial district court. The Organic Act makes no distinction as to these several jurisdictions, and qualifies each of them by providing that they shall be as limited by law.

It is necessary to determine the meaning of this limitation. This we have done in *Gallagher* v. *Basey*, 1 Mon. 462, where it is held, the meaning of the phrase "as limited by law" (as used in the ninth section of the Organic Act) is "that the mode and manner of proceedings may be controlled and governed by law." Not that the legislature may enlarge or contract such jurisdiction. Not that the common-law or chancery jurisdiction can be taken away. Not that the right of our Territorial district courts to exercise the joint jurisdiction of the district and circuit courts of the United States can be interfered with or disturbed, but that the mode of exercising this jurisdiction may be regulated by law. The legislature, having attempted to regulate the practice in the Territorial district courts, by the adoption of the Code, and having the authority under the Organic Act thus to legislate and to regulate the practice in such courts, the practice thus established must apply to the several jurisdictions conferred on said courts. The meaning of the Organic Act is not that the legislature may regulate the practice in common-law cases "alone," but as to the whole civil jurisdiction, and extending to those cases arising under

the constitution and laws of the United States it may establish the forms and modes of practice. There is nothing in the Organic Act to show that the right to regulate the practice in the district courts of the Territory by the legislature is limited to any particular branch of the jurisdiction of such courts, and the grant of power being general the practice established by the Code of Civil Procedure must be held to apply to and regulate the mode of proceeding when the district courts of the Territory are exercising any of the several civil jurisdictions upon them conferred by the Organic Act.

Adopting this view of the law the several district courts of the Territory have by rule provided that in all civil causes arising under the constitution and laws of the United States, the Territorial Practice Act shall prevail. We think the rule authorized and required by law. It follows that the judgment in this action was not duly obtained. There was no complaint and no summons in the case. The requirements of the Practice Act were not complied with. A suit on an undertaking and in this Territory cannot be commenced by *scire facias.* The forfeiture of the undertaking fixes the liability of the sureties, and only that. When so fixed an action may be instituted on the undertaking, and a summons issued as in other cases. In this regard the same practice should prevail when the United States is plaintiff, as if the Territory or a private person instituted the action.

So also if the action arose under the constitution or laws of the United States.

*Judgment reversed and cause dismissed.*