6   379
7   340
7   406
8    28
8    90
11   495

6   379
24   182

THE UNITED STATES, appellants, *v.* WILLIAMS ET AL., respondents.

PLEADING— *Public lands— Action to recover for timber cut — Complaint.—* In an action by the United States to recover the value of cordwood alleged to have been cut by the defendants on the public lands of the United States, a complaint which alleges that defendants had cut so many cords of wood from timber growing on the public lands, and the value thereof, and other formal matter, shows a sufficient cause of action to put defendants on their defense.

SAME — *Cause of action — Joinder.—* In such an action the complaint is not demurrable, on the ground of joining two causes of action, for charging the cutting of trees and timber generally, and also the cutting of trees and timber less than eight inches in diameter, contrary to the statute, the cause of action in both being the unlawful cutting of timber.

EVIDENCE — *Judicial notice — Regulations of secretary of the interior — Revised Statutes Montana, division 1, section 625.—* The rules and regulations as to the cutting of timber upon the public lands of the United States prescribed by the secretary of the interior under Laws United States, Forty-fifth Congress (2d Sess.), chapter 150, will be considered such an act of the executive department of the United States as the courts will take judicial notice of under Revised Statutes Montana, division 1, section 625; and it is not necessary to set out such rules in a complaint seeking to recover for an infringement thereof.

CONSTITUTIONAL LAW — *Laws United States, Forty-fifth Congress (2d Sess.), chapter 150, as regulations for cutting of timber, declared constitutional.—* Laws United States, Forty-fifth Congress (2d Sess.), chapter 150, enacting that timber growing on the public mineral lands in Montana may be cut for building, agricultural, mining and other domestic purposes, "subject to such rules and regulations as the secretary of the interior may prescribe for the protection of the undergrowth growing on such lands, and for other purposes," is constitutional, and the rules and regulations of the secretary of the interior made thereunder are not unconstitutional, as trenching upon the domain of the legislative department of the government.

PLEADING — *Demurrer — Nature of action — Revised Statutes Montana, division 1, section 83.—* Under Revised Statutes Montana, division 1, section 83, a demurrer will not lie to a complaint in civil action on the ground that it cannot be ascertained therefrom whether the action is in the nature of an action of replevin, or of trover or of trespass.

*Appeal from Second District, Deer Lodge County.*

ACTION to recover value of wood cut on public lands. Demurrer to complaint. Plaintiff appeals.

ROBERT B. SMITH, United States Attorney, for the appellant.

W. W. DIXON, for the respondent.

I. Appellant's counsel in his brief has assigned error only as to one of the grounds upon which the demurrer is based. This is that the court below was wrong in holding that the rules and regulations prescribed by the secretary of the interior were not sufficiently pleaded by reference merely to the date of their approval.

The real question is, was the court bound to take judicial notice of these rules and regulations? For it seems to be admitted that if it was not so bound, the pleading is insufficient and the demurrer good.

Upon this point appellant seems to rely mainly upon subdivision third of section 625 of the Code of Civil Procedure, Revised Statutes of Montana, page 156.

But it seems to me that counsel has misapprehended the true meaning and extent of this subdivision.

It applies only to acts of the executive department — that is, where the United States is concerned — to the personal acts of the president himself, in whom alone by the constitution the executive power is vested, and not to all acts of every inferior executive officer or agent, as counsel claim.

Counsel argue that the rules and regulations in question, although made by the secretary, are the acts of the president, and therefore must be judicially noticed, and cites *Wilcox* v. *Jackson*, 13 Pet. 513, and *Walsey* v. *Chapman*, 101 U. S. 769.

In these cases the question of judicial notice did not arise. In both cases the law vested the power to do certain acts in the president, and these acts having been performed by the head of a department, the court merely decided that

such acts must be presumed to have been done with the approval of the president and taken as his acts.

Besides, in the case at bar the power to make rules and regulations was vested by the law, not in the president, but in the secretary only.    See the Timber Law, Revised Statutes of Montana, page 33.

And the supreme court of the United States have decided that one court will not take judicial notice of bankruptcy proceedings pending in another court.   *Eyster* v. *Gaff et al.* 91 U. S. 521.

`  Nor of a pardon by the president.    *United States* v. *Wilson*, 7 Pet. 150.

Nor of the order of a military commander.    *Burke* v. *Miltenberger*, 19 Wall. 519.

Upon counsel's theory this last case was wrongly decided, for the president being by the constitution commander-in-chief of the army, the act of a subordinate commander would be the act of the president and the court should have noticed it judicially.                                                   -

In section 625 of the Code of Civil Procedure, relied upon by appellant, if courts must take judicial notice of all acts of all executive officers, what need was there of subdivision fifth?   Why should courts be required to take judicial notice of official signatures and seals, when they must judicially know all the acts that such signatures or seals could attest?

Section 625 of our code is the same as section 1875 of the California Code of Civil Procedure.   See Harston's Practice, p. 606.   And yet it has been held by the supreme court of California in at least three cases, that that court would not take judicial notice of the rules of the lower courts.   See *Warden* v. *Mendocino Co.* 32 Cal. 655; *Cutter* v. *Caruthers*, 48 Cal. 178; *Sweeny* v. *Stanford*, 60 Cal. 367.

And yet, according to counsel's theory, these rules were judicial acts of the lower courts, and should have been judicially noticed.

The construction of the statute contended for by appel-

lant, carried to its legitimate extent, would be impracticable and absurd.

If every act of every executive officer of the United States is the act of the president, and must therefore be judicially noticed by the courts, the courts are bound to know and recognize, without evidence, every private entry of land, every patent issued, every seizure made by a revenue officer, every official act of the most insignificant postmaster or clerk of a department, and each and all of the thousand rules and regulations, no matter how unimportant, prescribed by the different executive departments for the government of their subordinates or the transaction of their business. It cannot reasonably be presumed that the legislature so intended.

As to judicial notice, respondent refers to 1 Whart. on Ev. sec. 318; *Henly* v. *Tarpey*, 7 Cal. 288 (both cited by appellant). And to *People* v. *Buchanan*, 1 Idaho, 681. Also to *Nodine* v. *City of Union* (Sup. Court of Oregon); Pacific Coast Reporter, vol. 11, No. 7, p. 298.

That it is not sufficient to plead a city ordinance by *number only*.

II. But aside from the point argued by appellant's counsel in his brief, there were other grounds in the demurrer which entitled it to be sustained, even if the court below had been wrong upon that point.

The court below did not perhaps deem it necessary to consider these other grounds, but they are in the record here, and if any of them are well taken this court will not reverse the judgment.

The other grounds referred to are particularly specified in the demurrer. They are, generally, that the complaint does not state facts sufficient to constitute a cause of action, and that it is ambiguous, etc.

The only civil remedies at law which the United States could have for wood cut on the public lands unlawfully would be, 1st, replevin (or claim and delivery as it is called in our practice); 2d, trespass; 3d, trover and conversion.

I claim that the amended complaint here does not state facts sufficient to constitute a cause of action in any of these forms.

Not in replevin, for there is no allegation that respondents are in possession of the wood or detain it from appellant.

Not in trespass, for no damages are alleged.

Not in trover and conversion, for no conversion is alleged and no damages to appellant from any conversion.

The only allegation upon this matter of conversion is that respondents cut the wood and manufactured it into cord-wood. It is true it is afterwards alleged that the wood has been piled up near the flume or floated down it. But it is not alleged that this was done by respondents, nor is it anywhere alleged that respondents now have possession of the wood or detain it from appellant, or that appellant has sustained any damage by any acts which respondents have done.

Conversion is the gist of the action and must be directly alleged. See *Triscony* v. *Orr*, 49 Cal. 612; Boone on Code Pleading, sec. 136.

So, also, in this complaint two causes of action — one for cutting timber generally contrary to the statute, and another for cutting timber less than eight inches in diameter, contrary to the rules and regulations of the secretary of the interior — are attempted to be united and are not separately stated, and this also is one of the grounds of the demurrer.

The complaint, to say the least, is ambiguous and uncertain.

III. Respondents also made the point, although without going into any extended argument here in support of it, that congress had no right to delegate to the secretary of the interior the power to make rules and regulations and to give them the force of law and provide that their violation should be a misdemeanor, as was attempted to be done in this timber law. See the law, Revised Statutes Montana, pp. 33, 34.

That part of the law was an unauthorized delegation of

legislative powers and void. See Cooley's Const. Lim. pp. 116, 125, 191, 204, and many other authorities which might be cited.

The demurrer was properly sustained and the judgment should be affirmed.

McLEARY, J. This was an action brought by the United States against Henry Williams and A. A. Smith to recover the value of twenty-eight thousand cords of wood alleged to have been cut by the defendants on the public lands of the United States in violation of law. The defendants demurred to the complaint, and the court sustained the demurrer, and, the United States district attorney declining to amend his complaint, the case comes to this court on the correctness of the ruling sustaining the demurrer, and the judgment thereupon rendered in favor of the defendants.

The grounds of the demurrer are stated in the records as follows: *First.* That said amended complaint does not state facts sufficient to constitute a cause of action. *Second.* That said amended complaint does not state facts sufficient to constitute a cause of action as to the alleged trees cut which were less than eight inches in diameter. *Third.* Said amended complaint is ambiguous, unintelligible, and uncertain, in that (1) it cannot be ascertained therefrom whether the action is in the nature of an action of replevin or of trover or of trespass; and (2) it does not set out or recite the alleged rules and regulations prescribed under the statute of the United States, and contrary to which the trees and timber are alleged to have been cut. *Fourth.* Two causes of action are attempted to be improperly united in said amended complaint; that is to say: (1) A cause of action for cutting trees and timber generally, contrary to the statute; and (2) a cause of action for cutting trees and timber less than eight inches in diameter, contrary to the alleged rules and regulations prescribed under the statute.

We will consider these several grounds of demurrer in their regular order, as they appear in the record.

As to the first ground of demurrer, we would say that the complaint states more than sufficient facts to constitute a cause of action. The timber growing upon the public lands of the United States is the property of the government, and is not liable to be appropriated by the first comer, regardless of the rights of property. It would seem hardly necessary to announce so plain a proposition, did it not appear to be an idea fixed in the minds of some people, at least, that whatever is found upon the public lands belongs to the finder. This error has doubtless grown up from a misunderstanding among the people generally of the term "public lands," and which has doubtless been fostered by the extreme liberality of the government towards its citizens in the use of the timber growing thereon. The mere allegation in the complaint that the defendant had cut twenty-eight thousand cords of wood from timber growing upon the public lands, and alleging the value of the wood, and other formal matters, would be sufficient to put the defendants on their defense. *Kimball* v. *Lohmas*, 31 Cal. 156–160. If they had the right to cut the timber under the license granted by congress, for certain purposes, then "they should plead that license, and set up the facts bringing them within the law. It is not necessary for the United States attorney to negative every possible fact or circumstance by which the defendants might be justified in taking the timber from the public lands. Such particularity is not necessary, even in criminal pleadings, and certainly cannot be required in a civil action. The facts, and only those facts, must be stated, which constitute the cause of action. If more should be stated, the allegation thereof would be stricken out on motion. Nothing which constitutes matter of defense should be averred in the complaint. *Smith* v. *Richmond*, 19 Cal. 477; *Green* v. *Palmer*, 15 Cal. 415; *Canfield* v. *Tobias*, 21 Cal. 351.

The second ground of demurrer is the same as the first, but applies only to the trees alleged to have been cut which are less than eight inches in diameter. What we have al-

ready said applies with equal force to this ground of demurrer, and no further notice of this point is necessary.

The third ground of objection seeks to try this complaint by the common law forms, and objects that "it cannot be ascertained therefrom whether the action is in the nature of an action of replevin or of trover or of trespass." We do not believe that it is necessary to try the pleadings under our code, by the rigid rules of the common law. That procrustean bed has long since been broken by legislation. *Daniels* v. *Andes Ins. Co.* 2 Mont. 84; *Kimball* v. *Lohnas,* 31 Cal. 158. There is, in Montana, but one form of civil action. R. S. div. 1, § 1.. This applies as well to the courts sitting for the trial of causes arising under the constitution and laws of the United States as to the courts when sitting under the territorial laws; and, when the United States come into the courts in civil actions, they occupy the same position as other litigants. *United States* v. *Ensign,* 2 Mont. 399.

All the complaint needs to contain, after the title of the action, the name. of the court and county, and the names of the parties, is "a statement of the facts constituting the cause of action in ordinary and concise language," with a prayer for the appropriate relief. R. S. div. 1, § 83. Is it not necessary that the complaint should set out or recite the alleged rules or regulations of the department of the interior, made for the protection of the timber on the public lands, referred to in the third paragraph of the complaint? If the whole of that paragraph had been omitted, the complaint would still have been sufficient. No allusion to the rules and regulations of the interior department was necessary. If the timber was cut in accordance with those rules and regulations, that was a matter of defense which should have been pleaded by the respondents.

It is assumed by both parties that, if the court could take judicial notice of these rules and regulations of the department of the interior, made for the protection of timber, then the complaint is in this respect sufficient. This is no

doubt correct in practice (Story, Eq. Pl. § 24; Moak's Van Santv. Pl. 254), and as an examination of the terms of the complaint in regard thereto will show. Then, is it incumbent on the court to take judicial notice of these rules and regulations? Under our statute " courts take judicial notice of whatever is established by law, of public and private official acts of the legislative, executive and judicial departments of this territory and of the United States." R. S. Mont. div. 1, § 625. Doubtless our courts will take judicial notice of the fact that the powers of the national government are divided among the three great departments, the legislative, the executive, and the judicial; and, again, of the subdivision of the business of the executive department among the various subdepartments, of which the department of the interior is one,— all these facts being matters " established by law."

Can the rules and regulations prescribed by the secretary of the interior for the protection of timber be classed as public or private acts of the executive department of the United States? If so, the courts of this territory will take judicial notice thereof, under the third subdivision of section 625 of the first division of the Revised Statutes. It certainly was not the intention of the legislature to limit the acts of which judicial notice will be taken to the personal acts of the president or the governor. Such a limitation could serve no useful purpose, and would be without reason. There is no doubt that courts would take judicial notice of the extension of a pardon, or the issuance of a commission, or an order removing an officer, or the issuance of a land patent. *Patterson* v. *Winn*, 5 Pet. 241; *Yount* v. *Howell*, 14 Cal. 468; *Wetherbee* v. *Dunn*, 32 Cal. 108. But many of the most important acts of the president are performed through heads of departments. In the very nature of the existing order of things, the extent of this country, the magnitude of the interests involved, and the immense mass of business required to be transacted by

the executive department of the government, it would be impossible to dispose of it without confiding it, in a great measure, to the care of the cabinet officers; yet, whatever. the president does through these officers, is to be regarded in law as an act of the executive department. Then, may not the rules prescribed by the secretary of the interior be so considered? Nothing appears more reasonable. There could be no question in regard to the matter if the act of congress required them to be approved by the president. But although his approval is not, in express terms, required by the law, is it not reasonably to be inferred that he is cognizant of them, and that they meet his approval? It would seem so. From the importance of the subject, and the fact that the prescribing of these rules is the personal act of the secretary himself, we think that they may fairly be considered an act of the executive department of the United States. But as the act of congress of the 3d of June, 1878, requires the secretary of the interior to prescribe the rules and regulations under which the persons, permitted so to do, may fell and remove timber, this fact certainly gives such rules and regulations sufficient force to allow the court to take judicial notice thereof in interpreting and carrying into execution this very act of congress. Wade on Notice, p. 729.

Under this view of the case, the court below should have taken judicial notice of these rules and regulations, which would have relieved the district attorney from the necessity of pleading them *in extenso*. This being settled, the complaint should have been held sufficient in this respect, and the demurrer on that point overruled.

Another argument in favor of this view is that, *ab inconvenienti*, these rules and regulations make a large printed pamphlet, and it would require great labor to set them out *in hæc verba* in the complaint, or even to plead them in substance. It seems to us that it was to meet just such cases as this that the statute in regard to judicial notice was en-

acted. It seems to us that this provision of the code should be liberally construed in favor of the dispatch of the public business, and in furtherance of justice.

The decisions on the subject of judicial notice are not very numerous, and very few of them reach the precise point in question, as provided for in our statutes. We will, however, review some of them.

In California it has been decided that courts will take judicial notice of the territorial limits of the jurisdiction of district courts (*People* v. *Robinson*, 17 Cal. 371), of the regular terms of the district courts, and of the contiguity of the counties composing the districts (*Boggs* v. *Clark*, 37 Cal. 241); these being matters "established by law." It has also been decided in California that the courts of that state would take judicial notice of an act of congress, and the compliance therewith in obtaining the confirmation of a Mexican grant (*Semple* v. *Hagar*, 27 Cal. 168); and, further, that judicial notice will be taken of the signature of the president, and the seal of the United States, to a land patent offered in evidence (*Yount* v. *Howell*, 14 Cal. 468); and the same is declared to be the common law by Justice Story in *Patterson* v. *Winn*, 5 Pet. 241. In 1867 the supreme court of California decided that courts ought at least to go so far as to take notice as to who fill the various county offices within their jurisdiction and the genuineness of their signatures. *Wetherbee* v. *Dunn*, 32 Cal. 108.

In Texas, where there is no statute similar to ours, it has been decided that the court will take judicial notice that the city of Galveston is in a county of that name in the state of Texas (*Solyer* v. *Romanet*, 52 Tex. 568); and that the court will take judicial notice of the existence of a railroad corporation which has been recognized by a general act of the legislature (*Railroad Co.* v. *Knapp*, 51 Tex. 577). But it is also held by the same court that a court will take judicial notice of the fact that a certain person is a county judge of a certain county when, and only when, his official acts come in review before it. *Evans* v. *Womack*, 48 Tex. 230.

In the case of *Russell* v. *Hoyt*, 4 Mont. 420, 421, this court, in its opinion, uses the following language: "Courts will take judicial notice of what is generally known within the limits of their jurisdiction — of the division of a state or territory into towns or counties, of the leading geographical features of the land, of the position of important cities and towns, and of the government surveys of the public lands,— but we are not aware of any principle or authority that would authorize or require a court to take judicial notice of the place where mere private property is situated, or its distance from the seat of government of the political division within which it is situated. Only matters of public importance and notoriety are within the scope of what courts will take judicial notice of. Matters of mere private concern, as the location or situation of a farm, or a mining claim, or their distance from the seat of government, are not within the operation of the principle. The act of May 8, 1873, was by its terms in force from and after its passage. If the defendants were within the exception, they ought to have made that fact to appear by proof."

This case was appealed to the supreme court of the United States, and there reversed on this very point, that court holding that the court should take judicial notice of the distance from the territorial capital of a certain mine, proven by the public maps and surveys to be within a certain township in Lewis and Clarke county. Mr. Justice Field, in delivering the opinion of the court, says: "It is undoubtedly true that judicial notice is not taken of purely private concerns when they are not connected with or necessarily involved in a matter of a public nature; but it is otherwise when they are so connected or involved. For example, a court will take notice of the boundaries of the state or territory where it holds its sessions, and of judicial districts and municipal subdivisions within it. If the public surveys have established the distance from its capital to any such subdivision, the court will take notice of the fact; and, if private property be shown to be within that subdi-

vision, its distance, also, from the capital, will be judicially noticed — notice of the general fact embracing all the facts included in it.   In the present case, the court below was required to take notice of the extent of its jurisdiction, not only of the subjects placed by law under its cognizance, but of its extent territorially.   It should have known judicially whether the laws of the territory which it was appointed to expound were in operation with reference to a subject brought before it in the regular course of procedure. It was bound to know whether they were in force in the township designated in the county of Lewis and Clarke, on the 13th day of May, 1873, and that necessarily involved a knowledge of its distance from the capital of the territory. It may be that the judge's information on the subject was at fault, and calculation and inquiries on the subject may have been necessary.   Such is the case with reference to a great variety of subjects of general concern, of which courts are required to take judicial notice.   Information to guide their judgment may be obtained by resort to original documents in the public archives, or to books of history or science, or to any other proper source.   In this case, it appears by the government maps of the territory, upon which the public surveys are marked, that the distance from the seat of government to the nearest point of the township in which the mining ground in controversy is situated exceeds seventy-five miles.   The act of May 8, 1873, was not, therefore, in force there on the 13th of May, the day of the discovery of the Mammoth lode.   The court, having become informed on this subject, should have so declared, and its conclusion would not have been open to contest before the jury."   *Hoyt* v. *Russell*, 117 U. S. 404, 405.

Is it attempted improperly to join two causes of action in this complaint, as set out in the fourth paragraph of the demurrer?   We do not think so.   The cause of action on which the complaint is based is the illegal cutting of timber.   It matters not that the pleader has gone somewhat into particulars, and alleged that a portion of this timber was

more than eight inches in diameter, and a portion less than eight inches in diameter. As to the larger timber, it is true that the defendants may possibly, under certain circumstances, have had a right to cut it for certain purposes, while, as to that less than eight inches in diameter, they could have had no right to destroy it, or to remove it from the public lands. If they claim the license, they should plead it, and bring themselves within the rules of the interior department. In the absence of the statute granting the license, and the rules regulating it, if they cut the timber as alleged, they are simply trespassers, and they are called upon to show the facts justifying their acts in taking the timber as alleged, or to deny the taking altogether.

And it is further argued by respondent that the act of congress, in so far as it authorizes the secretary of the interior to make rules and regulations relative to the cutting of timber from the public lands, is unconstitutional and void.

Let us examine the terms of the law itself. Chapter 150, Laws Forty-fifth Congress (2d Sess.), reads as follows: "That all citizens of the United States, and other persons, *bona fide* residents of . . . Montana, . . . shall be, and are hereby, authorized and permitted to fell and remove, for building, agricultural, mining, or other domestic purposes, any timber or other trees growing or being on the public lands, said lands being mineral, . . . subject to such rules and regulations as the secretary of the interior may prescribe for the protection of the undergrowth growing upon such lands, and for other purposes."

R. S. Mont. p. 34, § 3 of the same chapter, makes it a penal offense to violate the provisions of the act, or any rules and regulations in pursuance thereof, made by the secretary of the interior. With the penal section we have nothing to do in this case.

And certainly no one has a right, independent of the statutes, to cut the timber on the public lands of the United States. The statute is the license to certain persons

to cut and remove the timber belonging to the government, for certain specified purposes. Certainly, congress, in its generosity granting this permission, had the right to do so upon proper conditions, and to provide that the use of the license given should be restricted by rules and regulations to be prescribed by the proper cabinet officer for the protection of the property of the government. Such a restriction was not a delegation of legislative powers, and cannot by any fair process of reasoning be so construed. The rules and regulations of the secretary of the interior, made under this statute, are not in this sense laws, and cannot be so considered. As well might the regulations of the treasury department, or the rules of the supreme court of the United States, or the rules of the postoffice, be considered laws, as the rules under consideration.

The principle of constitutional law forbidding the delegation of legislative powers was never intended to have any such effect. It would be impossible for congress to prescribe every detail governing the administration and management of every department of government; and, if it were possible, it would not be wise. The making of the rules and regulations for the protection of the timber and undergrowth, growing upon the public lands, does not trench upon the domain of the legislative department of the government, and does fall within the principles laid down by Judge Cooley in chapter 5 of his work upon constitutional limitations. In our opinion, the law of congress upon this subject is clearly constitutional; and it is the duty of the courts to enforce it whenever their judicial powers are properly invoked.

For the error of the court below in sustaining the demurrer to the complaint, the judgment is reversed and the cause remanded.

WADE, C. J., concurs.

BACH, J. (*concurring*). While I agree with the majority of the court as to the result, I cannot consent to that por-

tion of the opinion which relates to the question of judicial notice. I do not believe the law to be that the court below was bound to take judicial notice of the rules established by the secretary of the interior relating to the cutting of timber on the public domain.

Subdivision 3 of section 625 of the code may be properly divided so as to read the " private acts " and " the official acts " of the several departments mentioned therein. Looking at the section in this way, we find no new rule of evidence, or of judicial notice, save and excepting the rule therein contained relating to the private acts of the departments therein mentioned. As to the public acts of the legislative, executive and judicial departments of the territory and of the United States, our courts would take notice of them without the aid of a statute. See 1 Greenl. Ev. § 5; Whart. Ev. § 317. This rule applies with unusual force to territorial courts; for they owe their origin to the United States government. As to the private acts of those several departments, the section quoted from the code probably does make a new rule of evidence. At least it settles a disputed question; for many authorities have held that courts would not take judicial notice of such private acts. See *Dole* v. *Wilson*, 16 Minn. 525 (Gil. 472). In the case of *United States* v. *Wilson*, it was held that the court would not take judicial notice of a pardon because it is the private, though official, act of the president. 7 Pet. 160. Our code changes that rule, and includes private as well as public acts.

However that may be, we are not considering either a private act of a legislative, judicial or executive department of the government of the United States. The rule of the secretary of the interior is the act of which it is held the court should take judicial notice. I cannot consider the secretary of the interior as the executive of any department. He is but the trusted head of one department, of which the president of the United States is the executive, as he is of every one of the departments. Before the adoption of the constitution, and while that document was under

consideration, the most bitterly fought propositions was, "Shall we have one or several executives?" The result of the contest was section 1 of article 2 of the constitution, which declares: "The executive power shall be vested in a president of the United States of America." It is too late for the legislature of Montana to change that provision. The secretary of the interior is not one of the legislative departments of the United States government; for all legislative powers are vested in the congress of the United States by section 1, article 1, of the constitution. And the same document provides for the judicial powers, of which the secretary of the interior is not one.

As to the rules in question, they are in no sense the act of the president. If they became a law subject to his approval, they would be subject to his veto power. The law referred to was approved by the then president, who by signing the law merely authorized the secretary of the interior to pass such rules as he, the secretary, thought proper. The rules thus made were in no way the act of the president. They were the rules of the secretary of the interior, relating to the conduct of his particular department; and the court below had no more judicial notice of those rules than of any other rule which the secretary of the interior may have passed for the dispatch of business in his department.

Neither do I think that subdivision 2 of said section 625 makes it obligatory upon the court to take judicial notice of the rules referred to. That subdivision reads: "Whatever is established by law." These rules were not established by law. They were established by the secretary of the interior. The law referred to established merely his power to pass rules; and, if the rules had been proved, it would have been incumbent upon the court below to take judicial notice of the act which gave the secretary power to establish such rules.

The learned justice who writes the opinion in this case finds peculiar force in the words of the statute which pro-

vides that the secretary may prescribe rules, etc. This power, thus given to the secretary, is very much like the power given to municipalities which derive their power to pass ordinances from a statute; yet courts do not take notice of ordinances passed by the legislative branch of such corporations. When the ordinances are proved, then the courts take judicial notice of the law which gave power to the corporation to pass such ordinances; and they take judicial notice of the extent of the power; but the use of the power must be proved. In other words, neither the rules of the secretary, nor the ordinances of municipal corporations, become a part of the laws which authorize but do not enact them.

In the case of *Hensley* v. *Tarpey*, 7 Cal. 288, the court say: " The courts of this state are not bound to take official notice of the rules adopted for the regulation of the various departments of the federal government, or those established by the board of land commissioners or surveyor-general of the United States for California." Yet such rules, if they are the act of the president at all, are his public official acts, of which the supreme court of California would have taken notice judicially, by reason of common law rules of evidence governing such cases. But, not being the acts of the president, the court, in my opinion, properly held that such rules had to be proved.

Upon the other portions of the opinion I concur with the majority, and therefore agree that the judgment of the court below should be reversed.