## * CLAY PETERS VS. THE UNITED STATES.

1. Alleged errors of the trial court will not be reviewed on appeal unless presented to the trial court for review by motion for new trial, except that the sufficiency of the charge to constitute a public offense, or the jurisdiction of the court, may be questioned for the first time in this court.

2. Errors committed by the trial court will not be reviewed on appeal unless presented to the trial court for review by motion for new trial, unless they go to the sufficiency of the charge to constitute a public offense or jurisdiction of the court.

3. Under § 5392 R. S. U. S. the crime of perjury is committed by a person who, having taken an oath before a register or receiver, testifies falsely touching a material matter in issue.

4. The register or receiver of a United States land office is authorized to administer oaths in contest proceedings.

5. The rules and regulations established by the heads of executive departments, with the approval of the president, in execution of, or supplementary to, but not in conflict with, statutes defining their powers or conferring rights upon others, have the force and effect of laws.

6. The court will take judicial knowledge of the fact that the land described in the indictment is within the Oklahoma City land district, and that the register and receiver of the land office for such district have jurisdiction over any proceeding or contest having for its object and purpose the cancellation of a homestead entry for said land.

7. An allegation in an indictment that, "In the United States land office, at Oklahoma City, in said county, of which said office, John H. Burford was then and there register, and John C. Delaney was then and there receiver, a certain land contest and cause was pending and then and there came on to be tried," is equivalent to an allegation that the contest came on to be heard in the land office before the register and receiver.

8. The provision of the territorial statute providing for a change of judge is not in harmony with our Organic Act, and no change of judge can be had in either a federal or territorial criminal case.

9. It is not error for a trial court to overrule an application for a change of venue from the county where the affidavits presented in support

*NOTE.—This opinion was filed August 17, 1893; publication withheld pending decision on motion for rehearing.

of such motion do not set forth the facts, which in the opinion of the witness would operate to prevent a fair trial in the county in which the indictment is found.

10. Presumptions are in favor of the regularity and correctness of the proceedings and rulings of the court below, and this court will presume, in the absence of part of the instructions given, that the instructions as given covered all the questions of law necessary to inform the jury on every question involved in the trial of the cause, and that they embrace all the questions presented in the instructions refused.

11. The courts take judicial knowledge of the rules and regulations of the general land office, and such rules need not be pleaded or proven.

12. Rulings complained of must be made apparent by the record presented to this court, and the abstract must embrace enough of the record to fully present all the alleged errors.

*Error from District Court of Oklahoma County.*

The opinion was delivered by

BURFORD, J.: The defendant, Clay Peters, was prosecuted in the district court of Oklahoma county on an indictment for perjury, alleged to have been committed in the United States land office at Oklahoma City, tried by jury, a verdict of guilty returned, and judgment rendered on the verdict assessing his punishment at a fine of one dollar and imprisonment at hard labor for a term of four years in the penitentiary at Stillwater, Minnesota.

The defendant appealed from this judgment and assigned twenty-four alleged errors, for which he asks a reversal of the judgment. Several of the assignments of error are duplicated and a number of them are only proper subjects for a motion for new trial in the court below, and are not available as objections in this court unless embraced in the motion for new trial.

We have repeatedly held that errors committed by the trial court during the progress of the trial are not

available in this court unless presented to the trial court for review by motion for new trial, and that an assignment of error that the court erred in overruling the motion for new trial, saves all the questions properly embraced in the motion for new trial, and the practice is so well settled and established that it would seem there is no excuse for ignoring or violating this well known rule.

The first, second, third, fourth, fifth, sixth, seventh, eighteenth and twenty-fourth assignments of error are all embraced in the second and present but one single question, viz.: the sufficiency of the averments in the indictment to constitute a public offense.

The indictment is in two counts and the defendant was convicted upon the second; hence it is unnecessary to consider the first.

The second count charges, omitting the caption, as follows:

"The grand jurors of the United States of America, having been first duly empaneled, sworn and charged to enquire of offenses against the laws of the United States committed within said county, in said Territory of Oklahoma, upon their oaths aforesaid, in the name and by the authority of the United States of America, do find and present that at and within said Oklahoma county, in said territory, on the 7th day of January, in the year of our Lord one thousand eight hundred and ninety-one, in the United States land office at Oklahoma City, in said county, of which said land office John H. Burford was then and there register and John C. Delaney was then and there the receiver, a certain land contest and cause was pending, and then and there came to be tried, wherein one Andrew J. Brown sought to have the homestead entry of one Clay Peters for the northwest quarter of section thirty-five, in township twelve, north of range three west of the Indian meridian, in said territory, cancelled and forfeited to the United States, and thereupon it then and there became and was a material question whether the said Clay Peters had entered upon and occupied, contrary to law, any portion of the

lands opened to settlement under the acts of Congress approved on the first and second days of March, respectively, in the year of our Lord one thousand eight hundred and eighty-nine, and the proclamation of the president of the United States, dated the 23rd day of March in the year last aforesaid, and prior to twelve o'clock noon of the 22nd day of April of the year last aforesaid, and it then and there became and was a material question where the said Clay Peters was at the hour of twelve o'clock noon on the day last aforesaid in the year last aforesaid, and at what hour of the day last aforesaid in the year last aforesaid the said Clay Peters located and made settlement upon the above described quarter section of land, and then and there Clay Peters was produced as a witness in said land contest and cause, and as said witness in said land contest and cause was duly sworn to testify to the truth, the whole truth and nothing but the truth in said cause by said John C. Delaney, receiver as aforesaid, he, the said John C. Delaney, as said receiver, being then and there duly authorized and empowered under the laws of the United States of America to administer such oath, and being then and there a witness in said land contest and cause as aforesaid, so duly sworn as aforesaid, the said Clay Peters did knowingly, wilfully, corruptly, feloniously and falsely testify and depose and say in substance and effect, that he, the said Clay Peters, was in the Pottawatomie reservation at twelve o'clock, noon, on the 22nd day of April in the year last aforesaid; that he, the said Clay Peters, at twelve o'clock, noon, on the day last aforesaid, in the year last aforesaid, entered the Oklahoma country from the Pottawatomie reservation and that he, the said Clay Peters, located and made settlement upon the aforesaid quarter section of land at the hour of two o'clock in the afternoon of the 22nd day of April, in the year of our Lord one thousand eight hundred and eighty-nine.

Whereas in truth and in fact the said Clay Peters was not in the Pottawotamie reservation at twelve o'clock, noon, on the 22d day of April, in the year last aforesaid, and whereas in truth and in fact the said Clay Peters did not enter the Oklahoma country from the Pottawotamie reservation on the day last afore-

said, in the year last aforesaid, and whereas in truth and in fact the said Clay Peters did not enter the Oklahoma country from the Pottawotamie reservation on the day last aforesaid in the year last aforesaid at the hour of twelve o'clock, noon, and whereas in truth and in fact the said Clay Peters did not locate and make settlement upon the aforesaid quarter section of land at two o'clock in the afternoon of the 22d day of April, in the year of our Lord one thousand eight hundred and eighty-nine.

"In all of which particulars the testimony, statements and declarations so testified and deposed unto by the said Clay Peters were then and there material matter in and to the said contest and cause so instituted, begun and heard as aforesaid, and were then and there not true, but false and were then and there by the said Clay Peters not believed to be true, but were then and there by him believed to be false

"And so the grand jurors aforesaid, upon their oaths aforesaid, do say that the said Clay Peters, on the 7th day of January, in the year of our Lord one thousand eight hundred and ninety-one, at the county aforesaid, did knowingly, falsely and corruptly, and feloniously commit wilful and corrupt perjury in and by his oath so taken as aforesaid, before the said John C. Delaney, receiver as aforesaid, he, the said John C. Delaney as such receiver then and there having sufficient and competent power and authority under the laws of the United States of America to administer said oath to the said Clay Peters.

"Contrary to the form of the statute in such case made and provided and against the peace and dignity of the United States of America.

"HORACE SPEED, *United States Attorney.*"

In support of the demurrer to the indictment it is contended that there is no law of the United States under which this prosecution can be maintained. It is contended that the case presented by the indictment does not come within the provision of Sec. 5392, R. S. U. S., and that Sec. 5 of the act of 1857 is repealed.

At common law in order to constitute the crime of

perjury it was necessary that the alleged false testimony should have been given before a competent judicial tribunal having jurisdiction of the parties to and the subject matter of the action or in the course of justice.

Our statute is much broader and more comprehensive, and makes false swearing punishable as perjury when committed by a person who, having taken an oath before a competent tribunal, officer or person in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose or certify truly, or that any written testimony, declaration, deposition or certificate by him subscribed, is true, wilfully and contrary to such oath states or subscribes any material matter which he does not believe to be true.    (R. S. U. S. § 5392.)

It is not necessary under this statute that the false testimony should be given in a judicial proceeding, but if the oath is taken before a competent tribunal, officer or person in any case in which a law of the United States authorizes an oath to be administered, and the matter sworn to is material and false, it is perjury.

The rules require the testimony of witnesses in contest cases to be taken and reduced to writing by the officers of the land office.

Testimony cannot be taken without administering an oath to the witness.   Bouvier defines "testimony" as follows:

"The statement made by a witness under oath or affirmation."   (Second Bouvier's Law Dict., 589.)

The authority to take testimony carries with it the power and authority as well as the requirement to administer oaths to the witnesses.

"It is a general principle of law in the construction of all powers of this sort that where the end is re-

quired the appropriate means are given." (*United States vs. Bailey*, 9th Peters, 238.)

The secretary of the interior is charged with the supervision of public business relating to the public lands. (R. S. U. S., § 2478.)

The commissioner of the general land office is authorized to perform, under the direction of the secretary of the interior, all executive duties pertaining to the sale and survey of the public lands. (R. S. U. S., § 453.)

The commissioner is also empowered under the direction of the secretary of the interior to enforce and carry into execution by appropriate rules and regulations all the provisions of the statue in reference to public lands. (R. S. U. S. § 2478.)

These rules and regulations, when adopted, approved and put in force by the interior department, have all the force and effect of a law of the United States.

It has been uniformly held that the heads of the executive department may, with the approval of the president, establish rules and regulations in execution of, or supplementary to, but not in conflict with, the statutes defining their powers or conferring rights upon others, and when so adopted, such rules and regulations have the force and effect of law. (*United States vs. Symonds*, 120 U. S., 46.)

In this case the oath administered by the receiver of the United States land office was authorized to be administered by a law of the United States.

"The register or receiver is authorized, and it shall be their duty to administer, any oath required by law or the instructions of the general land office, in connection with the entry or purchase of any tract of public lands." (R. S. U. S. § 2246.)

The rules of the general land office, of which the courts take judicial knowledge, and which need not be pleaded or proved, require that where a contest is

filed in the local land office against an entry or other filing, the register and receiver shall set a day for trial, notify the contestee of the time and place of hearing, and on the day set for trial take the testimony of all witnesses present and reduce same to writing, allow opposing claimants to confront and cross-examine witnesses, and exclude no testimony offered unless it be obviously irrelevant.

Rules approved Aug. 13, 1885; 4 L. D. 35.

*United States vs, Bailey.* 9 Peters, 238.
*United States vs. Eliason*, 16 Peters, 291.
*Allridge vs. Williams*, 3 Howard, 1.
*Gratiot vs. United States*, 4 Howard, 80.
*Ex-Parte Reed*, 100 U. S., 13.
*Smith vs. Whitney*, 116 U. S., 181.
*United States vs. Boggs*, 31 Fed. Rep., 337.
*United States vs. Eaton*, 144 U. S., 677.

The courts take judicial notice of the rules and regulations of the executive department of the government promulgated by authority of law.

*United States vs. Hearing*, 26 Fed Rep., 744.
*Fisher vs. Halleck*, 50 Mich., 463.
*United States vs. Williams*, 6 Mont., 379.
*Low vs. Hodson*, 72 Maine, 104.
Twelfth Am. & Eng. Enc. of Law, 153.

The courts will take judicial notice of the rules and regulations of the general land office.

*United States vs. Hearing*, 26 Fed. Rep. 744.
Twelfth Am. & Eng. Enc. of Law, 153.

The conclusion necessarily follows, deducible from the statutes of the United States, rules and regulations of the general land office and the adjudications of the court of highest resort in the nation, that prosecutions for perjury may be maintained under § 5397, R. S. U. S., for false swearing in the United States land offices.

In the case of *United States vs. Bailey*, 9th Peters, 238, the supreme court of the United States had under consideration the question whether or not the crime of

perjury could be based upon an oath required by a rule of the treasury department. It was admitted that there was no statute of the United States requiring such oath to be taken, but there was a statute making it perjury to swear falsely in support of any claim against the United States. The statute defined the offense, and the question presented for determination of the court was whether or not the oath was administered by one authorized by a law of the United States.

The court sustained the conviction upon the ground that the rule of the treasury department permitting oaths of the character required to be made before a justice of the peace was a reasonable regulation and within the powers of the secretary of the treasury to protect the government from fraud. This case has never been reversed but has been often quoted and approved.

It might seem that the later case of *Eaton vs. United States.* 144 U. S. 677, is in conflict with the rule in the Bailey case, but a close examination of the case will reveal a material distinction. In the Eaton case, *supra,* the defendant was indicted and tried for failure to keep certain books required to be kept by a rule or regulation of the treasury department. There was no law of the United States making it criminal to fail to keep such books, and hence the court held that an offense could not be created by a rule of the department, or that the failure to do an act required by a rule or regulation would not subject the offender to criminal punishment under other provisions of the statute.

In the case at bar the crime of perjury, or false swearing, is defined and the punishment prescribed by statute, and the rules of the general land office in no sense create the offense or attempt to make an act

punishable, not otherwise criminal, viz: false swearing.

The act of taking the oath is but one of the material ingredients, and when it is shown to have been administered by a person authorized to administer oaths in such cases in a matter in which an oath is authorized, that ingredient of the offense is complete.

We think this class of cases come squarely within the rule announced by the supreme court in the Bailey case.

Yet we need not rely solely upon the rules or regulations of the general land office alone to support the indictment in this case. Congress has, by express enactment, recognized and ratified these rules and regulations and made them law in Oklahoma.

Section 20 of our Organic Act, 26 Stat. at Large, p. 91, provides:

"That the procedure in applications, entries, contests and adjudications in the Territory of Oklahoma shall be in the form and manner prescribed under the homestead laws of the United States and the general principles and provisions of the homestead laws. * * *"

It will be observed that this law goes further than to make the homestead laws applicable, but adopts and puts in force the procedure in contests then in force as well as the general provisions and principles of the homestead laws.

What was the procedure in contests at that time? It was the practice and requirement of the department, and had always been, to require witnesses in contest cases to be sworn by the register or receiver before proceeding to take their testimony. This was well known to the legislative power when the above statute was enacted, and we must assume that they legislated with special reference to the law as it then existed, and not only the law as found in the statutes

of the United States, but also the general principles and provisions governing and applicable to such laws, as well as the practice and procedure then in vogue in the department and land offices. And if it were conceded that there is no authority given by statute for administering oaths to witnesses in contest cases in other jurisdictions, certainly the rule is different in this territory, and in every instance where an oath was required by a regulation of the general land office in relation to homesteads on the public lands prior to the adoption of the Organic Act, such oaths are now authorized by a law of the United States.

It is earnestly contended by counsel for appellant that the indictment in this case can only be held sufficient under § 5 of the act of March 3, 1857, 11th U. S. Stat. at Large, 250, and as they further contend that said section is repealed by § 5595 and § 5596 of the revised statutes, it is insisted that the demurrer to the indictment should have been sustained.

As to whether § 5, *supra*, is still in force, is a question upon which the courts of the country seem to be divided.

Section 5392, R. S. U. S., defining the crime of perjury, was adopted and became a law in 1790. It was evidently found to be insufficient to embrace all cases of false swearing, and to meet and provide a punishment for a certain class of special cases that might arise in the United States land offices, congress, in 1857, passed an act which was entitled "An act in addition to an act more effectually to provide for punishment of certain crimes against the United States, and for other purposes."

This act is comprised of five sections. One, two and three are carried forward and incorporated into the revised statutes as §§ 5341, 5342 and 5343, respectively.

Section 5 was omitted from the revision, and is as follows:

"Section 5.    And be it further enacted that in all cases where any oath, affirmation or affidavit shall be made or taken before any register or receiver, or either or both of them, of any local land office in the United States or any territory thereof, or where any oath, affirmation or affidavit shall be made or taken before any person authorized by the laws of any state or territory of the United States to administer oaths or affirmations or take affidavits, and such oaths, affirmations or affidavits are made, used or filed in any of the said local land offices or in the general land office, as well in cases arising under any or either of the orders, regulations or instructions concerning any of the public lands of the United States, issued by the commissioner of the general land office, or other proper officer of the government of the United States, or under the laws of the United States, in any wise relating to or affecting any right, claim or title of any contest therefor to any of the public lands of the United States, and if any person or persons shall, taking such oath, affirmation or affidavit, knowingly, wilfully or corruptly swear or affirm falsely, the same shall be taken and deemed to be perjury, and the person or persons guilty thereof shall upon conviction be liable to the punishment prescribed for that offense by the laws of the United States." (Eleventh Stat. L. 50´)

This section is much broader and more comprehensive than § 5392 and many acts that were theretofore not punishable were, by its provisions, made criminal, and the punishment prescribed for perjury made applicable thereto.

An examination of the act of 1857 discloses the fact that each of its sections relate to a different subject and each is independent and complete within itself. Section 5 repeats the enacting clause and is as complete within itself as if it stood seperate and alone, and is to all intents and purposes an independent and complete act.    It did not have the effect to repeal the act of 1790 defining the crime of perjury for the reason

that the act of 1790, (now § 5392,) was general in its terms, while the act of 1857 was special in its provisions and applications.

There has been no subsequent legislation which directly or by implication repeals the act of 1857 further defining false swearing unless it is repealed by the failure of the revision committee to incorporate it in the revised statutes, or by the terms of the provisions of title 74, revised statutes.

The intention of congress as to repeal of prior statutes by the provisions of title 74 is to be determined by the language employed to indicate their purpose and the object to be attained.

The revisers were not authorized or empowered to make any changes in the then existing laws, or to omit any laws of a general nature. The purpose of the revision as gathered from the law authorizing same, was to bring forward and incorporate in one volume and under appropriate heads and titles, all the laws in force at the time. Title 74 of the revised statutes was evidently prepared by the revisers and submitted with their work as necessary for its completion. Section 5594 of this title is declaratory of the scope of the revised statutes and shows that the purpose was to embrace all the statutes of the United States that were general and permanent in their character, and this section construed in connection with § 5595 clearly demonstrates that it was not the purpose of congress to have omitted or to repeal by this act any law of a permanent or general nature which had not been previously repealed or superceded by a subsebuent act.

Section 5596 provides:

"All acts of congress passed prior to said 1st day of December, one thousand eight hundred and seventy-three, any portion of which is embraced in any section of said revision, are hereby repealed, and the section applicable thereto shall be in force in lieu thereof, all

parts of such acts not contained in such revision having been repealed or superceded by subsequent acts or not being general and permanent in their nature: Provided, that the incorporation into said revision of any general or permanent provision taken from an act making appropriations, or from an act containing other provisions of a private, local or temporary character, shall not repeal or in any manner affect any appropriation, or ·any provision of a private, local or temporary character contained in any of said acts, but the same shall remain in force, and all acts of congress passed prior to said last named day, no part of which are embodied in said revision, shall not be affected or changed by its enactment."

The purpose of this section is to repeal but one class of laws, and it is explanatory of the reasons for such repeal. The entire section would seem to have been unnecessary as affecting the validity of any laws, and while it contains the repealing provisions, it also discloses the purpose of congress and gives as a reason for repealing a certain class of abrogated laws, that they had already been repealed or superceded by subsequent statutes. If this was the object of the revision ·and the purpose of congress in adopting title 74, then it cannot be contended with reason that § 5 of the act of 1857 is repealed, for, as before stated, there had been no subsequent legislation prior to the adoption of the revised statutes which repealed or superceded its provisions.

This section is special in its application and permanent in character and standing as an independent statute complete within itself; it may stand alone without the aid of any other statute or part of statute, and as no part of it can be said to be embraced in any part of said revision, and there is no section in the revised statute properly and completely applicable thereto, and hence none to be in force in lieu thereof, it must be yet in ·force, and was, no doubt, omitted from the revision by inadvertence and oversight. It

is a very necessary and wise provision of law. It makes many acts of false swearing criminal, which would not otherwise be punishable, and the tendency of the times, as evidenced by the legislative enactments of modern times, is to broaden rather than narrow the scope of our criminal statutes defining and punishing the many acts of false swearing.

Section 5392 defines perjury generally and is general in its application, while § 5, act of 1857, is specially applicable to cases of making false affidavits, or giving false testimony in or to be used in land offices in connection with the disposal of public lands.

They are concurrent statutes not in conflict, and both in force, and a prosecution may be maintained under either.

A conviction in the case at bar may be sustained under either statute, if the proceedings are otherwise regular and conform to law. And there was no error in overruling the demurrer for the reason that there was no law authorizing the proceedings. It is urged in support of the demurrer that the indictment does not show that the proceedings in the land office were had before the register and receiver acting jointly.

The indictment alleges that at the time of the giving of the alleged false testimony, there was a register and receiver of the United States land office at Oklahoma City, O. T. It shows who each of them were. It shows that a land contest was pending in said land office, of which office John H. Burford was at the time the duly qualified register, and John C. Delaney the duly qualified receiver. That in said land contest one Andrew J. Brown was seeking to have the homestead entry of Clay Peters for the northwest quarter of section thirty-five, in township twelve north, range three west of the Indian meridian, cancelled and forfeited to the United States.

We know, as a matter of law, that the lands described in the indictment are in the Oklahoma land district, and that the register and receiver of that land office have jurisdiction over any proceeding or contest having for its object and purpose the cancellation of a homestead entry for said land. They are a competent tribunal under the laws of the United States to try and determine any question as to the validity of a homestead entry within the boundaries of their land district, and for the purpose of hearing testimomy in such case either of them is authorized by a law of the United States to administer oaths to witnesses and parties to the proceedings. It does not follow that they must act jointly in all their official duties. Each land office, to be legally constituted and authorized to transact business, must be supplied with a register and a receiver. The indictment here shows that the Oklahoma land office had both at the time of the trial of the *Brown vs. Peters* contest case. They can act independently and separately in most of the matters pertaining to their duties in the land office. They need not act jointly in administering oaths, or in examining witnesses, or in hearing testimony, for all testimony is required to be reduced to writing and cases may be decided upon the record so made. But in rendering opinions and publishing decisions on matters affecting the rights or interests of adverse parties, the law contemplates that they shall act jointly.

Many of their duties are separate and distinct and in many instances the duties the one cannot be performed by the other.

If, as in the case at bar, the office is supplied with both officers, whether both are actually present or not, either may swear witnesses, either may hear the testimony, either may direct the proceedings, superintend the reducing of testimony to writing, pass upon

the questions of practice, unless a joint ruling is at the time demanded, and either may conduct the entire hearing of a contest until a finding of fact is made and conclusions of law announced, in which matters they should act jointly and either concur or dissent.

This has been the rule of practice and procedure in the land offices since their establishment and has been acquiesced in by the executive departments, the courts, and people, until it has become a settled rule of procedure, which we see no reason to disturb in this case.

In further support of the demurrer it is contended that there is no allegation in the indictment to the effect that the contest of *Brown vs. Peters* was pending before the register and receiver, and that the allegation that said contest was pending in the United States land office, and then and there came on to be heard, is not equivalent to an allegation that the contest was pending before and came on to be heard by the register and receiver. If this allegation stood alone and was not aided by the other allegations of the indictment, there might be some reason in appellant's contention. But the allegation is that "In the United States land office at Oklahoma City, in said county, of which said office John H. Burford was then and there the register, and John C. Delaney was then and there the receiver, a certain land contest and cause was pending and then and there came on to be tried." This allegation is equivalent to an allegation that the contest came on to be heard in the land office before the register and receiver.

The term "land office," as here used in the indictment, has a special and well-understood meaning It does not refer to the room, building or place wherein the business is transacted, but means the constituted legal power or authority which acts and controls. It

is used in the same sense as "court" in ordinary legal parlance.

A court cannot exist without a judge, and there must be a clerk and a sheriff or marshal, but an allegation that a certain cause was pending in the district court of a certain place is sufficient without alleging that a certain person was acting as judge of said court or that a judge was present. (*United States vs. Walsh*, 22d Fed. Rep. 644.)

Congress has recognized this rule and applied it to the higher land office. Section 2246 revised statutes authorizes the register and receiver to administer oaths required by the instructions of the general land office. To say that this meant the place or room in which the commissioner does business would be silly. The words "general land office" is here used to designate the power vested with the authority to issue instructions.

Strictly speaking, there can be no United States land office without a register and a receiver, and when an office is legally established and organized with its register and receiver, and the boundaries of its district established, it has jurisdiction over all public lands in its district set apart for entry, and the proceedings relating to same in the first instance, and when it is alleged that a land office has the proper officers, and that such proceedings were pending in such office as the court knows it had jurisdiction of and authority to hear, it is all the law requires and is sufficient, and the indictment in this case is not open to the objections urged. The appellant filed his motion and affidavit in the court below for a change of judge, alleging bias and prejudice of the presiding judge. This motion was overruled and he complains of the action of the court.

In the case of the *United States vs. Stanley*, recently decided in this court, we held that the territorial

statute providing for change of judge is not in harmony with our Organic Act and that no change of judge can be had in either a federal or territorial criminal case. We adhere to the ruling in that case and hence there was no error in overruling said motion.

Appellant then filed his application and affidavit, corroborated by the affidavits of five other persons requesting a change of venue from the county. This application was properly overruled. Neither of the affidavits presented in support of the motion contain any ground or reason for a change of venue. The affidavit of Peters reads as follows:

"Clay Peters, the above named defendant, being duly sworn, on oath states that a fair and impartial trial cannot be had in said county of Oklahoma."

Five other persons swear that they have read the above affidavit and it is true as they verily believe. If there were any causes existing to prevent the defendant from having a fair and impartial trial in Oklahoma county, it was his duty to bring them to the knowledge of the court by setting out such reasons fully in his affidavit, and each of the corroborating affidavits should have stated all the facts which in the opinion of the witnesses would operate to prevent a fair trial. It is the duty and province of the court to pass upon such questions and there is no error in overruling an application for a change from the county which simply alleges a conclusion without stating any reasons for such change or conclusion. The provision of our criminal procedure was adopted from the Dakota statutes, and the supreme court of Dakota has often construed its provisions, and, we think correctly, and we follow the rulings of that court.

In the *Territory vs. Egan,* 3rd Dakota, p. 125, that court said:

"Affidavits for change of venue from county must

state facts and circumstances from which the conclusions are deduced that a fair and impartial trial cannot be had. The court must be satisfied from the facts positively sworn to in the affidavit, and not from a general conclusion to which the defendant may swear or which his witnesses may depose they verily believe to be true."

This same doctrine is held by the courts in a number of states.

*People vs. McConnely,* 1st Cal. 383.
*People vs. Yookuma,* 53rd Cal. 566.
*State vs. Stahley,* 16th Minn. 282.
*State vs. Ball,* 25th N. W. (Iowa) 757.

Some of the instructions given by the court, on the trial of the cause, are complained of by the defendant.

Only a few of the instructions given are set out in the abstract of record filed in this court, and the abstract does not contain the evidence.

As abstract propositions of law, we perceive no objections to the instructions before us. They seem to be applicable to such issues as would present themselves on a trial of this kind. They correctly state the law and are fair to the appellant.

The instructions requested by appellant and refused by the court cannot be considered in this court. If any portion of the instructions given by the court are absent, we will not consider the correctness of instructions refused.

Every presumption must be in vavor of the regularity and correctness of the proceedings, and rulings of the court below, and those presumptions prevail until the party complaining shall point out and properly present the errors, if any exist, to the appellate court. We will presume, in the absence of part of the instructions given, that the instructions given covered all the questions of law necessary to inform the jury on every

question involved in the trial of the cause, and that they embrace all the questions presented in the instructions refused. Any errors complained of must be made apparent by the record presented to this court, and this has not been done in this instance.

A number of other rulings of the trial court are complained of and errors assigned calling in question their correctness, but as they are not discussed in appellant's brief, they must be taken as waived and abandoned, and we shall not give them consideration.

So far as we can determine from the record before us, the appellant has had a fair trial; has had the benefit of a proper and correct application of the law; has been ably defended by competent and industrious counsel, and we find nothing in the record which will justify us in interfering with the judgment of the trial court.

We have examined and disposed of each question presented in the brief of appellant, and treated the case as properly before this court. Notwithstanding this action, we desire to disclaim any purpose of establishing a precedent of passing upon cases in this court upon records such as is presented in this case. The abstract is but little more than an index to the record presumed to be on file in the district court. While our practice act provides for for the review of criminal cases in the supreme court upon an abstract of the record presented by the appellant, the abstract when filed should contain such parts of the record as to properly and fully present all objections to the proceedings in the trial court; and such parts of the record as it purports to contain should be complete. In order to give this court jurisdiction, the abstract should contain the notice of appeal served upon the clerk of the trial court as well as the notice of appeal served upon the United States attorney.

Our Organic Act provides that cases may be taken to the supreme court by appeal or writ of error, but inasmuch as our legislature has failed to provide the mode of proceeding in writs of error, we are left in federal cases to follow the practice in the federal courts, or the common law practice. Our criminal procedure act is adopted from the Dakota code, but, for some reason not apparent, the legislature saw fit to omit the provisions of that code under the title, "Writ of error and appeal to the supreme court," and in lieu thereof inserted the provisions of the Iowa criminal code on appeals, and which provides for appeals only in criminal cases. In passing upon questions of practice under this chapter, which appears as article 11, chapter 72, of our statute, the supreme court of Iowa has repeatedly held that if the abstract fails to contain the notices of appeal, that the case will be dismissed without examination.

*State vs. Farrington*, 51st N. W. 256.
*State vs. Rogers*, 32nd N. W. Rep. 7.
*State vs. McIntosch*, 49th N. W. Rep. 844.
*State vs. Campbell*, 46th N. W. Rep. 115.

It is further held by that court that when the abstract fails to allege or show that it contains an abstract of all the record, in the case, the case cannot be reviewed by the supreme court. (*State vs. Hogan*, 45 N.W., 903.)

An abstract that fails to show that it contains all the evidence and shows that it does not contain all the instructions, fails to present a cause upon which the rulings of the court in overruling a motion for new trial can be reviewed. (*State vs. Butterfield*, 34 N. W. Rep. 750.)

The court cannot consider exceptions to instructions given, and order overruling motion for new trial where the instructions and motion do not appear in the abstract.

*State vs. Sexauer*, 54 N. W., 431.

*State vs. Duckworth*, 50 N. W., 549.

We cite these authorities in order to show that while a case may be reviewed upon an abstract of the record, such abstract must show that the appeal has been taken; that the proper record has been perfected and filed in the court below and that the abstract is an abstract of all the record, and the abstract, when made, should, we think, be authenticated in some manner.

We have reviewed this case at considerable length on account of its importance to the defendant, and also, to, we trust, finally dispose of some of the difficult questions which have so frequently been before this court.

The judgment of the district court is affirmed at costs of appellant.

All justices concurring.