# B. S. TALBOT v. FIRST AND SECURITY NATIONAL BANK OF MINNEAPOLIS.[1]

### January 23, 1920.

### No. 21,503.

**Agent without implied authority to indorse checks payable to his principal.**
1. The rule of law is well settled in this state that an agent has no
implied authority to indorse checks received by him, payable to his prin-
cipal, for collections which he was authorized to make.

**Bankruptcy — indorsement of trustee checks by agent under power of
    attorney.**
2. Plaintiff executed a power of attorney, authorizing his agent to re-
ceive and receipt for dividends upon claims in bankruptcy.  The agent
received and indorsed the checks and drew the money thereon from the
bank.  In an action against the bank for the conversion of the checks,
defendant had a right to show the rules and practice in bankruptcy with
reference to the method of handling and paying out funds by the trustee,
as bearing upon the intention of the parties as to the authority of the
agent to indorse such checks.

Action in the district court for Hennepin county to recover a balance
of $397.58.  The amended answer alleged that Erstgaard and Works
made the indorsements and each of them, with the full knowledge and
consent of the plaintiff, and that plaintiff fully and completely author-
ized said indorsements and consented thereto, and upon such indorse-
ments the checks, by authority and consent and for the benefit of plain-
tiff were negotiated to parties other than defendant for the full amount

[1]Reported in 176 N. W. 184.

thereof, to whom defendant subsequently paid the same upon proper presentation and indorsement by the then holders thereof; that the difference between the amount received by the plaintiff and the amount of $663.83 was retained by them, the said attorneys and attorneys in fact of the plaintiff, without the knowledge of defendant, as compensation for their services, costs and disbursements performed and incurred in the matter of the presentation and proof of plaintiff's claims and the collection and receipt of said money, and not otherwise; and that for their services, costs and disbursements so performed and incurred, the said attorneys and attorneys in fact had at all times a lien upon the checks and the proceeds thereof, and upon the dividends coming on said claims so presented and proved by them; and with full and complete knowledge of all the facts and circumstances connected with the issuance of the checks, the indorsements, negotiations and payment thereof, the plaintiff fully and completely authorized, ratified and confirmed the delivery, the indorsements, negotiations and the payment of said checks, and all acts done by defendant in the premises.

The case was tried before Steele, J., who, when plaintiff rested on the pleadings, denied defendant's motion to dismiss the action and at the close of the testimony its motion for a directed verdict, and granted the motion of plaintiff for a directed verdict for $403.53. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*Lancaster & Simpson* and *James E. Dorsey,* for appellant.

*Douglas, Kennedy & Kennedy,* for respondent.

QUINN, J.

Action for the conversion of four bank checks of the aggregate face value of $663.83. The trial court directed a verdict for the plaintiff. From an order denying its alternative motion for judgment or for a new trial the defendant appeals.

Three actions by different plaintiffs against the defendant were tried together. The facts are substantially alike. In 1917, B. S. Talbot, John Knutzen and Frank Talbot incorporated the M. T. & K. Bootery, with a paid-in capital of $30. In February, 1918, the company went into bankruptcy. It was indebted to the incorporators for services and borrowed

money. Each of them executed separate powers of attorney to Robert M. Works and O. J. Ertsgaard, empowering them to present and prosecute their claims in the bankruptcy court, and to receive payment of dividends thereon and receipt therefor and generally to do and perform all and every act and thing necessary to be done in the premises. The claims were presented and allowed in the bankruptcy court. The trustee thereafter issued four checks to B. S. Talbot, three to John Knutzen and two to Frank Talbot for dividends on their claims. The alleged conversion of these checks forms the basis of the three actions. They were drawn by the trustee on the defendant bank against funds which he had on deposit therein, payable to the respective claimants and delivered to the agents so appointed, who indorsed their principals' names thereon, cashed the same and deposited the money in their trust account. There was delay in remitting. The claimants became dissatisfied and on August 25 revoked the authority of Works and Ertsgaard and appointed another in their stead. On August 29 Works and Ertsgaard rendered claimants a statement of the moneys collected, charging them 50 per cent of the amount collected and to be collected for their services, inclosing therewith their personal checks for the amount collected less their charges. Claimants retained the checks until September 10 when they were cashed.

Upon the trial defendant offered in evidence rule 29 of the General Orders in Bankruptcy,[1] and offered to show that the practice in bankruptcy was to take receipts in the form of an indorsement upon checks, and that no other form of receipt was taken. An objection to this offer was sustained and an exception noted. At the close of the testimony the court directed a verdict against the bank for $403.63, being the difference between the amount of the face of the trustee checks and the amount remitted to plaintiff by his agents. The decisive question is, whether the indorsements by the plaintiffs' agents, of the trustee checks, were authorized so as to protect the bank in the payment thereof.

The rule of law is well settled in this state, that an agent has no implied authority to indorse checks received by him, payable to his principal, for collections which he was authorized to make. William Deering & Co. v. Kelso, 74 Minn. 41, 76 N. W. 792, 73 Am. St. 324; McFadden v. Follrath, 114 Minn. 85, 130 N. W. 542, 37 L.R.A.(N.S.) 201; Doeren v. Krammer, 141 Minn. 466, 170 N. W. 609. In the instant case, how-

---

[1] [See 32 C. C. A. XXVIII, 89 Fed. XII.]

ever, the agent's authority was to collect, receive and receipt for dividends coming through bankruptcy proceedings. Upon the trial defendant offered to show what the rules and practice in such proceedings were with reference to the method of depositing and paying out funds by the trustee. The rules in bankruptcy are adopted by the Federal Supreme Court under authority of the Bankrupt Act.[1] The form of the power of attorney used therein is prescribed in the same manner. These rules are effective and control in such proceedings. Since the authority was to receive and receipt for dividends under such provisions, the conclusion might follow that such rules and practice were within the contemplation of the parties, evidenced by the power of attorney, leading naturally to the further conclusion that it was intended that the agent should have authority to do all that was necessary to entitle him to receive the money, including authority to indorse the trustee checks given for such dividends. Under this view of the case proof of the rules and practice in bankruptcy should not have been rejected. The right of the attorney to indorse such checks does not arise as a matter of law. The authority of the attorney in such cases is one of contract between the attorney and the client in respect to which the Federal Supreme Court, in the adoption of the bankruptcy rules of procedure, did not intend to interfere; the rules are matters of procedure only. J. B. Orcutt Co. v. Green, 204 U. S. 96, 27 Sup. Ct. 195, 51 L. ed. 390.

Reversed.

HALLAM, J. (dissenting in part).

I concur in the reversal but I think that there should accompany it a direction for judgment for the defendant notwithstanding the verdict for the plaintiff, and, insofar as this relief is denied the defendant, I dissent.

The Bankrupt Act requires the courts of bankruptcy to designate banking institutions as depositories for the money of bankrupt estates. Section 61 (30 St. 562). Trustees are required to deposit all moneys received by them in a designated depository and to disburse only by check or draft thereon. Section 47 (3-4). Referees are required to declare dividends and deliver to trustees dividend sheets showing the dividends declared and to whom payable. Section 39 (1). The term "creditor" may include his duly authorized agent or attorney. Section 1 (9). The

[1][U. S. Comp. St. 1916, § 9585, et seq.]

Supreme Court is directed to prescribe all necessary rules and forms and orders as to procedure. Section 30. Rule 29, referred to in the opinion, provides among other things that no moneys deposited as required by the act shall be withdrawn except by check or warrant signed by the clerk or by the trustee and countersigned by the judge or referee.

The powers of attorney, referred to in the opinion, constituted those designated as attorneys, quoting from the paper book, "our true and lawful attorneys, for us, in our name and place to attend and vote at any and all meetings of creditors, in bankruptcy or otherwise, for the purpose of electing a trustee or for any other purpose; to attend and act at all sittings of court; to accept in writing any proposition of compromise submitted; to receive payment of dividends or moneys due under compositions and receipt therefor; and generally to do and perform all and every act and thing whatsoever requisite and necessary to be done in the premises, with as full powers as the undersigned would have if in each case present. Full power of substitution is hereby granted and any and all other like authority heretofore given is hereby revoked. The referee is hereby directed to send to you all necessary notices." This corresponds in a general way to official form No. 20, though it differs in phraseology.

In J. B. Orcutt Co. v. Green, 204 U. S. 94, 27 Sup. Ct. 195, 51 L. ed. 390, the court referred to a bankruptcy rule there under consideration as "an amplification of the law with respect to procedure." It has been said of the rules that they have the force and effect of law. In re Gerber, 186 Fed. 693, 108 C. C. A. 511; Sabin v. Blake-McFall Co. 223 Fed. 501, 139 C. C. A. 49. It is not claimed that a rule makes a contract for the parties to the proceeding, but it may aid the construction of the power of attorney. It does not seem to me that rule 29 is of great aid in construing the power. The statute prescribes about all that the rule contains of materiality here. If it is worth the while the court should take judicial notice of the rule as well as of the general nature and course of a proceeding in bankruptcy. Judicial notice is taken of the rules and decisions of the land department, and of other rules and regulations of the department of the interior, and of rules and regulations of the treasury department. Whitney v. Spratt, 25 Wash. 62, 64 Pac. 919, 87 Am. St. 738; Peters v. U. S. 2 Okl. 116, 33 Pac. 1031; Caha v. U. S. 152 U. S. 211, 14 Sup. Ct. 513, 38 L. ed. 415; Carr v. First Nat. Bank, 35 Ind. App.

216, 73 N. E. 947, 111 Am. St. 159; U. S. v. Williams, 6 Mont. 379, 12 Pac. 851; Low v. Hanson, 72 Me. 104; Johnson v. Lincoln County, 50 Mont. 253, 146 Pac. 471; Hastings v. Herold, 184 Fed. 759. The rules of the Supreme Court, relative to the administration of bankruptcy matters, so far as useful in construing a power of attorney made and used in a bankruptcy proceeding, should be noticed without proof.

But rule 29 aside, the act definitely requires that moneys be deposited with a depository and that they be withdrawn only on check or draft, and that the referee furnish the trustee dividend sheets showing to what creditors dividends are to be paid, and it clearly contemplates that the creditor may be represented by an attorney in fact. We judicially know enough of the bankruptcy proceeding so that it should not be necessary to produce evidence that the creditor quite commonly is represented by an attorney in fact who votes upon the election of a trustee, accepts a proposed composition, acts for the creditor throughout the proceeding, and receives payments and dividends. It seems to me that an attorney in fact, clothed with authority so complete as that given by the power quoted, with express authority to receive payment of dividends and generally to do whatever the creditor might do if personally present, is authorized to indorse dividend checks made payable to his principal. The power of attorney is for construction by the court. The case is sent back for a new trial that the power may be construed with such aid as rule 29 gives, after it is proved, and which cannot by any possibility be proved to be different from what we now know it to be, and with the further aid which comes from proof of an alleged custom that the trustee take no other receipt than the indorsement on the checks—a fact which does not seem particularly helpful in the construction of the power. My view is that upon the record the verdict as a matter of law should be for the defendant and that the litigation should be ended by a direction to that effect.

DIBELL, J.
I concur in the above.